**UNITED STATES of America, Plaintiff,**

v.

**Robert W. GUTHRIE, Defendant.**

**No. CR–92–168–AAM.**

United States District Court,
E.D. Washington.

Jan. 13, 1993.

Leslie R. Weatherhead of Witherspoon, Kelly, Davenport & Toole, Spokane, WA, for defendant.

Phillip H. Warren and James J. Sowers of U.S. Dept. of Justice, Antitrust Div., San Francisco, CA, for U.S.

## ORDER DENYING DEFENDANT'S MOTION FOR ACQUITTAL, NEW TRIAL, OR ARREST OF JUDGMENT

McDONALD, District Judge.

Before the court for resolution without oral argument is Defendant's Motion for Judgment of Acquittal, or in the Alternative New Trial or Arrest of Judgment (Ct.Rec. 58). Defendant is represented by retained counsel Leslie Weatherhead. The United States is represented by Phillip Warren and James Sowers of the United States Department of Justice, Antitrust Division. For the reasons stated more fully below, the court is denying defendant's motion.

After trial to a jury in Spokane, Washington, Robert Guthrie was found guilty of two counts of bid rigging in violation of the Sherman Antitrust Act. Guthrie moves this court for a judgment of acquittal notwithstanding the verdict, or in the alternative, for either an order in arrest of judgment or for a new trial.

Guthrie's principal arguments are: that the government failed to establish interstate commerce, a substantive and jurisdictional element of a Sherman Act violation; that the jury instructions erroneously directed a verdict against him; that there was a fatal variance between the indictment and the proof at trial; that due process compels his acquittal; and that he was wrongfully denied the opportunity to present exculpatory evidence. The government responds: that the jury found interstate commerce; that the jury instructions properly stated the law on interstate commerce; that there was no variance between the indictment and proof at trial because collusion is not an element of bid rigging; that, as the court ruled in pretrial motions, Guthrie's due process rights were not violated by application of the per se rule; and that the court's ruling on Guthrie's offer of exculpatory evidence was compelled by clear Ninth Circuit authority.

As a preliminary matter, the court notes that several of these issues have been extensively argued before and ruled on by the court, both during pretrial proceedings and throughout the course of the trial.

FACTS:

The vast majority of the facts in this case have never been contested. Evidence admitted at trial established that on two occasions Robert Guthrie attended and participated in the public non-judicial foreclosure sales of real property located in Spokane, Washington. The sales were held in Spokane and were conducted by trustees who were Washington residents. Guthrie himself is a resident of Washington.

At these sales, Guthrie contacted other potential bidders for the properties on which he intended to bid. On both occasions, Guthrie entered into agreements with the other potential bidders that, in return for his pay-

ments to them, they would not bid on the properties and he alone would bid. The other bidders accepted Guthrie's payments on both occasions and thereafter refrained from bidding. Guthrie was the only bidder at both sales, and, submitting bids of $1 above the minimum bid levels, he was also the successful bidder at both sales.

Uncontested evidence established that out of state banks held the notes that were secured by the properties Guthrie purchased. The notes on both properties were guaranteed by the United States Department of Housing and Urban Development. Evidence established that the out of state banks initiated the foreclosure process on the properties, selected the trustees to conduct the foreclosure sales, instructed the trustees on the conduct of the sales, and finally, received the sale proceeds from the trustees after deduction of the trustees' fees.

What the parties did contest at trial was the extent to which Guthrie's activities at these sales were observed by the trustees conducting the sales. They also contested who, as a legal matter, was the rightful owner of the proceeds of the sales. They did not contest, however, the involvement of the out of state banks, or the eventual transfer of funds from the trustees to the banks.

ANALYSIS:

1. *Motion for Acquittal or for Arrest of Judgment: Adequacy of Proof Concerning Interstate Commerce*

Pursuant to Federal Rules of Criminal Procedure 29(c) and 35, Guthrie argues that he is entitled to either a judgment of acquittal notwithstanding the verdict or to an order in arrest of judgment. Ct.Rec. 59 at 3–4. The court shall enter a judgment of acquittal if "the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a). The court shall arrest judgment if "the indictment or information does not charge an offense or if the court was without jurisdiction of the offense charged." Fed.R.Crim.P. 35.

Guthrie argues that the government did not offer sufficient proof at trial to establish interstate commerce, which is both a substantive element for Rule 29 purposes and a jurisdictional element for Rule 35 purposes.

He argues that his activities were strictly intrastate and were not in the flow of interstate commerce.

■ In deciding a Rule 29 motion for acquittal, the court must look to all the evidence, and, when taken in the light most favorable to the government, determine whether "a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Alston*, 974 F.2d 1206, 1210 (9th Cir.1992); *see also* Charles Wright, 2 *Federal Practice and Procedure: Criminal*, § 467 (1982).

■ A Rule 34 motion for arrest of judgment, on the other hand, must be decided on the record alone, that is, on the indictment, plea, and verdict. The evidence is not within the record. Wright, *supra* at vol. 3, § 571. Challenges to the sufficiency of the evidence are not proper under Rule 34. *Id.*

Because the government chose at trial not to argue that Guthrie's activities "affected" interstate commerce, the parties only introduced evidence, and the court only instructed the jury, on what would constitute activities "in the flow of" interstate commerce. Guthrie's post trial motions therefore stand or fall on what must be proven, as a matter of law, to establish that an activity is in the flow of interstate commerce. Much of the parties' argument involves the interpretation of two Supreme Court cases, *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) and *McLain v. Real Estate Bd., Inc.*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980).

*Goldfarb* concerned the Virginia State Bar Association's price fixing for real estate title searches. The Supreme Court found that interstate commerce was involved even though the title searches themselves were intrastate transactions. "Where, as a matter of law or practical necessity, legal services are an integral part of an interstate transaction, a restraint on those services may substantially affect commerce for Sherman Act purposes." *Goldfarb*, 421 U.S. at 785, 95 S.Ct. at 2012.

As Guthrie points out, *Goldfarb* appears on its face to articulate the test for affecting commerce, not the test for what is in the flow

of commerce. The Supreme Court, however, considered *Goldfarb* in *McLain* and stated that "[t]he *Goldfarb* holding was not addressed to the 'effect on commerce' test of jurisdiction." *McLain,* 444 U.S. at 244, 100 S.Ct. at 510. Rather, jurisdiction was established in *Goldfarb* "on the ... ground that the activities of the attorneys were within the stream of interstate commerce." *Id.*

Guthrie argues that the *McLain* Court mischaracterized *Goldfarb,* and that it did so in dictum. Guthrie's argument has some appeal. However, for the reasons discussed more fully below, this court believes that it is bound by *McLain* and that *McLain* compels a decision against Guthrie on the interstate commerce issue.

First, with respect to whether or not *McLain*'s characterization of *Goldfarb* is dictum; as this court reads *McLain,* it is essential to the Supreme Court's holding that *Goldfarb* not be the controlling test. *McLain* was indisputably an "affecting commerce" case. Both the district court and the court of appeals had decided the case under their interpretation of the *Goldfarb* rule. The Supreme Court did not question that, if *Goldfarb* applied, jurisdiction would not lie. Instead, they squarely confronted *Goldfarb* and characterized it as an expression of the "stream of commerce" test. The characterization is therefore not mere dicta, but rather necessary to their holding that jurisdiction existed in *McLain.*

Second, as to Guthrie's argument that *McLain* is a mischaracterization of *Goldfarb;* the *McLain* Court did not simply say that *Goldfarb* was a stream of commerce case and leave it at that. Instead, they described *Goldfarb*'s reasoning.

Since the financing depended on a valid and insured title we concluded that title examination was "an integral part" of the interstate transaction of obtaining financing for the purchase of residential property and, because of the "inseparability" of the attorneys' services from the title examination process, we held that the legal services were in turn an "integral part of an interstate transaction.

*McLain,* 444 U.S. at 244, 100 S.Ct. at 510. This description of *Goldfarb*'s reasoning provides this court with a workable standard for what is in the flow of commerce. In Guthrie's case, if the foreclosure sale was an integral part of an interstate foreclosure transaction, and if Guthrie's activity was an inseparable part of the foreclosure sale, then his activity would be an integral part of an interstate transaction, and therefore in the flow of interstate commerce. Because *McLain* provides a facially reasonable reading of *Goldfarb,* and because that reading appears essential to *McLain*'s holding, this court accepts *McLain*'s characterization of *Goldfarb.*

The government argues that the *Goldfarb* test, as construed by *McLain,* is precisely what the jury was instructed they had to find in order to return a verdict of guilty. It argues that the prosecution established, and the jury found, that the rigged sales were an essential part of the foreclosure transactions that involved out of state banks. The strong, and essentially uncontested, evidence on this issue concerned the role the out of state banks played in initiating, directing, and concluding the loan foreclosures, which included the sales of the properties that Guthrie purchased. The court therefore finds that, taken in the light most favorable to the government, this evidence is more than sufficient to allow a rational juror to conclude, beyond a reasonable doubt, that Guthrie's activities were an integral part of the interstate foreclosure transactions.

Guthrie makes two arguments as to why such proof is insufficient even under *Goldfarb.* First, he argues that, unlike the price fixing in *Goldfarb,* Guthrie's restraint was not market-wide, affecting all foreclosure sales in Washington, instead, it only affected those few sales at issue. While this is true, it is arguable that *Goldfarb* required market-wide activity, that is, required that the attorneys' services be an inseparable part of title searching, because there were no specific interstate transactions at issue. *See Goldfarb,* 421 U.S. at 775–78, 95 S.Ct. at 2007–08. Therefore, the Court could only find that the restrained activities were an integral part of some interstate transactions not specifically involved in the case by inference, and it could

only so infer because state law required attorneys to perform all title searches and because the price fixing involved all attorneys in the state. This is distinguishable from the case at bar where there were in fact specific interstate transactions and the question put to the jury was whether the rigged sales were an essential part of those specific transactions.

Guthrie's second argument is essentially that the foreclosure transactions were not themselves a form of interstate commerce. He argues that the interstate commerce at issue was the original loan transactions, in which Guthrie played no part. Because the foreclosure sales were not an essential part of the loan transactions, Guthrie argues, his activity did not restrain an essential part of the interstate commerce in loans. He argues that, because people don't buy or sell "foreclosures" in interstate commerce, foreclosure transactions are not, as a matter of practical economic reality, recognized as interstate commerce.

The court finds this argument to be without merit. The parties introduced evidence and the jury was instructed on whether the foreclosure transactions constituted interstate commerce. The jury was specifically instructed that interstate commerce is "the transaction of business across a state line or the movement of goods or money across a state line in the course of business transactions." Inst. 17. They were further instructed that:

> Funds in interstate commerce are considered in commerce until they reach the point where their movement is intended to end. A temporary pause in their transit

does not necessarily mean that the funds are no longer in commerce—where there is a practical continuity of movement, funds remain in commerce until they reach their final destination.

*Id.* There was substantial, uncontested, evidence that the funds Guthrie tendered to the trustees at the foreclosure sales eventually made their way across state lines to the out of state banks. Guthrie argued to the jury that the transaction was entirely complete when he tendered funds to the trustees. This court finds, however, that when the evidence is taken in the light most favorable to the government, it is undeniable that a rational juror could have found, beyond a reasonable doubt, that there was a practical continuity of movement of the funds across state lines to the out of state banks.[1]

Because the court believes that *Goldfarb*, as construed by *McLain*, controls the question of interstate commerce, it finds the evidence more than adequate to allow a rational juror to have found, beyond a reasonable doubt, that Guthrie's activities were in the flow of interstate commerce. Accordingly, the court denies Guthrie's motion under Rule 29. The court also denies his motion under Rule 34 as, under the same *Goldfarb* analysis, the indictment and the verdict sufficiently establish the jurisdictional issue of interstate commerce.

2. *Motion for New Trial: Jury Instruction on Interstate Commerce*

■ Guthrie argues that the court erroneously instructed the jury on the interstate commerce element. Ct.Rec. 59 at 4–7. He

---

1. Guthrie's argument based on *Dominion Parking corp. v. Baltimore & Ohio R.R.*, 450 F.Supp. 441 (E.D.Va.1978) does not compel a different conclusion. The business allegedly restrained in *Dominion Parking* was that of providing parking spaces. The court found that the actual business of renting parking spaces was overwhelmingly local and therefore not in interstate commerce. The court also found that the parking lot operator's purchase of supplies from out of state, and their payment of rent to an out of state landlord, did not put them in the flow of interstate commerce.

*Dominion Parking*'s finding on interstate transfer of documents is, however, distinguishable from the case at bar. In *Dominion Parking* the

allegedly restrained intrastate business bore no relation to the out of state transactions. Here, however, the government's evidence concerning the initiation and execution of the loan foreclosures, including the sales in which Guthrie participated, is more than sufficient for a rational juror to conclude that the alleged restraint involved an essential part of those interstate transactions. Accordingly, the fact that *Dominion Parking* found interstate transfer of documents, standing alone, insufficient to put the defendant in interstate commerce, does not compel the conclusion Guthrie urges, that the interstate transfer of documents and funds in this case was therefore necessarily outside of the flow of commerce.

therefore requests a new trial pursuant to Federal Rule of Criminal Procedure 33. Rule 33 allows the court to grant a new trial where the interests of justice so require. A district court can grant a new trial to cure improper instructions. *See* Charles Wright, 3 *Federal Practice and Procedure: Criminal,* § 556 (1982).

Guthrie makes several arguments concerning the errors of the court's instruction. The propriety of a court's instruction can not be determined by examining any single paragraph, phrase or word in isolation. Wright, *supra* at vol. 2, § 485. Accordingly, the court's full interstate commerce instruction is set out below.

### Instruction No. 17

Another of the elements charged in the Indictment is that the alleged conspiracy was in restraint of interstate commerce. Interstate commerce means, simply, the transaction of business across a state line or the movement of goods or money across a state line in the course of business transactions.

The government can demonstrate a restraint on trade if it can show that the conspiracy directly involves goods or transactions moving across state lines. If the government proves only an indirect or incidental relationship between an agreement to restrain trade and interstate commerce, you must find the defendant not guilty.

Funds in interstate commerce are considered in commerce until they reach the point where their movement is intended to end. A temporary pause in their transit does not necessarily mean that the funds are no longer in commerce—where there is a practical continuity of movement, funds remain in commerce until they reach their final destination.

While real estate remains physically in one state, transactions related to real estate can be in the flow of interstate commerce. To decide whether the alleged conspiracy was "in the flow" of interstate commerce, you must determine whether the activities of the alleged conspiracy restrained an essential part of a real estate transaction across state lines. When the alleged conspiracy occurs within the flow of interstate commerce, the magnitude of the commerce restrained is unimportant.

If you find that the November 17, 1989 sale of the property located at West 3514 Walton Avenue was an essential part of the foreclosure transaction involving the transfer of funds from the State of Washington to South Carolina, then the interstate commerce requirement would be met for Count 1.

If you find that the April 6, 1990 sale of the property located at 3204 E. 24th Avenue was an essential part of the foreclosure transaction involving the transfer of funds from the State of Washington to Maryland, then the interstate commerce requirement would be met for Count 2.

It is a question of fact for you to determine whether the alleged conspiracy was in restraint of interstate commerce. In this regard, interstate commerce is not a technical legal question, but a practical one based upon the facts establishing the manner in which business operates.

Guthrie's first argument is that the instruction allowed the jurors to find interstate commerce without any reference to a "directness" or "continuity" test. He concedes that the second paragraph required a finding of not guilty if Guthrie's activities were only indirectly or incidentally related to interstate commerce. However, he argues that the latter part of the instruction, by not restating the second paragraph's caveats, contradicted the second paragraph and allowed the government to shift the juror's focus away from the second paragraph.

■ The government responds that the second paragraph carries as much weight as the latter paragraphs and that the instruction as a whole was consistent with the second paragraph. As to the first contention, the court notes that instruction 1 informed the jury that the order in which the instructions was given had no significance as to their importance. It further instructed the jurors that the attorneys might highlight specific portions of the instructions but that the jury should "consider the instructions as a whole and should not place any undue emphasis on any particular instructions or

part thereof." Accordingly, the government was well within its rights to focus the jurors' attention on any portion of the instructions it pleased. That right in no way affects the propriety of the instruction as a whole.

With regard to Guthrie's contention that the instruction was internally inconsistent, the court could arguably hold that requiring the jury to find Guthrie's activities an essential part of an interstate real estate transaction was not, strictly speaking, identical to requiring them to find that his activities were directly and not merely incidentally related to interstate commerce. Such a holding, however, would entail semantic hair-splitting. Accordingly, the court rejects Guthrie's argument that the instruction was. internally inconsistent.

Guthrie's second argument is that the instruction improperly adopted the government's position as to how the transaction should be viewed. He argues that paragraphs five and six, by calling the jurors' attention to the foreclosure transaction, rather than to Guthrie's activities, constituted a comment on the evidence. He further argues that it "put the focus on the transaction all witnesses agreed did not involve Guthrie." Ct.Rec. 59 at 6.

■ The government contends that the character of the instruction was wholly consistent with *Goldfarb.* It argues that the *Goldfarb* Court necessarily considered the larger transaction of which the challenged, and admittedly wholly intrastate, activity was a part. Such an analysis is central to *Goldfarb.* Under *Goldfarb,* the only way a local activity can ever be in the flow of interstate commerce is if it is an integral part of larger transactions that are in interstate commerce. Accordingly, the court finds that its instruction was wholly consistent with *Goldfarb.*

■ It is also within the court's power to draw the juror's attention to the facts it thinks important in the case. Charles Wright, 2 *Federal Practice and Procedure: Criminal,* § 488 (1982). As long as the jury is instructed that they are the sole judges of the facts, such comment is acceptable where the judge believes it will be helpful to the jury and where the jury is instructed that they are the sole judges of the facts. *Id.* Instruction 1 included the charge to the jury that: "Nothing the court has to say in these instructions is to be taken as an indication that it has any opinion about the facts of the case, or what that opinion is. It is not the court's function to determine the facts, but rather yours." Instruction 17 concluded by reminding the jurors that: "It is a question of fact for you to determine whether the alleged conspiracy was in restraint of interstate commerce."

Given the importance of the interstate commerce question to this case, the court believes that directing the jurors' attention to the relevant transactions, as determined by *Goldfarb,* was helpful to their deliberations. To the extent that this constituted a comment on the evidence, it was well within the court's power and instructions 1 and 17 properly reminded the jury that no such comment relieved them of their sole responsibility to determine interstate commerce as a question of fact. Accordingly, this court finds that Guthrie's objection to paragraphs five and six is without merit.

Guthrie next argues that instruction 17 blurred the distinction between "in the flow of" and "affecting" interstate commerce. He argues that, by not requiring the jury to find a direct, non-incidental relationship between Guthrie and an out of state party, the instruction did not in fact require them to find that Guthrie's activities were in the flow of interstate commerce.

The government responds that, again following *Goldfarb,* there is no requirement that Guthrie himself have had a direct, non-incidental relationship to an out of state party. According to the government, the critical inquiry is whether the local activity was integral to interstate transactions. The court's instruction requiring the jury to find that "the activities of the alleged conspiracy restrained an essential part of a real estate transaction across state lines" seems wholly consistent with *Goldfarb,* as discussed in part 1 above.

Finally, Guthrie argues that the instruction amounted to a directed verdict, as it told the jury its verdict should turn on an undisputed fact. He alleges that there was no challenge

to the fact that the sale was related to the foreclosure. Such a relationship, he argues, is not the same as asking whether Guthrie's purchase of the properties put him in interstate commerce.

The government responds that the instructions required the jury to find more than a mere relationship between the sales and the foreclosures. As noted above, paragraph four of the instruction required the jury to find that the alleged conspiracy restrained an essential part of a real estate transaction across state lines. As discussed in part 1 above, Guthrie's implied contention that the foreclosure transactions were not themselves transactions in interstate commerce is without merit. Accordingly, requiring the jury to find that the conspiracy restrained an essential part of those transactions comports with *Goldfarb* and is a proper instruction.

This court finds that none of Guthrie's challenges to instruction 17 survive comparison to *Goldfarb*. Because, as discussed above, this court believes that *Goldfarb* controls the court's consideration of this case, and because the court's instruction is proper under *Goldfarb*, the court denies Guthrie's motion for a new trial based on his challenge to instruction 17.

### 3. *Motion for Acquittal: Indictment and Proof at Trial (Collusion as Element of Bid Rigging)*

Guthrie argues that the court should acquit him due to the court's refusal to instruct that collusion is an element of bid rigging. Ct.Rec. 59 at 7–8. The grand jury indicted Guthrie for bid rigging. Ct.Rec. 1. Guthrie believes collusion is a distinct element of bid rigging. Accordingly, he argues that the court's refusal to so instruct allowed the petit jurors to find guilt without finding an element of the crime charged in the indictment and that therefore the court must acquit for insufficiency of the evidence on an essential element.

It is unclear whether this motion might more properly have been brought as a motion for a new trial based on improper instruction. In either case, however, the question turns on the sufficiency of the court's instructions.

The court's instructions on bid rigging read as follows:

#### Instruction No. 14

The Indictment charges the defendant with bid rigging. Bid rigging is an agreement between two or more persons to eliminate, reduce, or interfere with competition for a job or contract that is to be awarded on the basis of bids. Bid rigging may be an agreement among competitors about the prices to be bid, who should be the successful bidder, who should bid high, who should bid low, or who should refrain from bidding; or any other agreement with respect to bidding that affects, limits, or avoids competition among them.

Every conspiracy to rig bids is unlawful, regardless of the motives of the parties or any economic justification.

The aim and result of every bid rigging agreement, if successful, is the elimination of one form of competition.

Thus, if you determine that the defendant and at least one other person reached an agreement as to whom would refrain from bidding at a foreclosure sale, bid rigging has been established.

In considering the evidence, you should determine first whether there was a conspiracy to rig bids as charged in the Indictment and then whether the defendant knowingly became a member of that conspiracy.

#### Instruction No. 16

Under the Sherman Act, bid rigging is per se illegal. If you find there was a conspiracy to rig foreclosure sales bids, it does not matter why the bids were rigged or whether the sales price was too high or low; reasonable or unreasonable; fair or unfair. It is not a defense to bid rigging that the defendant may have had good motives, or may have thought that what he was doing was legal, or that the conspiracy may have had some good results. You may not consider any justification for rigging the sales bids.

The government responds that instruction 14 is nearly identical to the ABA's bid rig-

ging instruction from *Sample Jury Instructions in Criminal Antitrust Cases* (1984), and that it is routinely used in bid rigging cases. They further contend that it is an accurate statement of the law on bid rigging, that is, that the evil of bid rigging is the agreement to limit competition in bidding, not the manner in which the agreement is made.

The government also cites several cases concerning the per se nature of bid rigging in support of its argument that collusion is not a distinct element of bid-rigging. Ct.Rec. 60 at 7–8. Guthrie points out in his reply brief that all of these cases, at one time or another, use the word collusion, or note that it was involved. Some of them even include the term in indictments or jury instructions on bid rigging. Ct.Rec. 61 at 7–8. While Guthrie's observation is certainly correct, the inference he draws from it, that collusion is therefore a necessary element of bid rigging, is not so clear. Logic does not require, and none of the cases state, that because most bid rigging involves collusion, collusion is therefore a necessary element of bid rigging.

There is a tendency in these cases to use phrases like "collusive, non-competitive, and rigged bids." *See, e.g., United States v. MMR Corp. (LA)*, 907 F.2d 489, 494 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1388, 113 L.Ed.2d 445 (1991); *United States v. Koppers Co.*, 652 F.2d 290, 295 (2d Cir.), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 617 (1981). The court believes it is reasonable to read these phrases, not as an indication of three separate elements of bid rigging, but rather as a variety of ways of describing the same thing. Accordingly, the court finds that its instruction 14, specifically the first paragraph, which is identical to the ABA's sample jury instruction on bid rigging, adequately defines bid rigging as "an agreement between two or more persons to eliminate, reduce, or interfere with competition for a job or contract that is to be awarded on the basis of bids."

The issue of collusion as an element of bid rigging was previously argued at trial. Transcript at 411–27. At that time, the court found that its action was controlled by the recent Ninth Circuit opinion in *United States v. Alston,* 974 F.2d 1206 (9th Cir.1992). The court noted that the *Alston* instruction on per se violations of the Sherman Act excluded, as a matter of law, several defenses, including the defendant's belief that what he was doing was legal. The court construed Guthrie's collusion argument as an attempt to introduce evidence on the defenses that *Alston* held were unavailable.

Guthrie argued that he was attempting to offer evidence of collusion not in relation to such defenses, but rather in relation to his theory that collusion is a distinct element of bid rigging. When the court noted that *Alston* involved no collusion, Guthrie responded that *Alston* concerned price fixing and not bid rigging. The court stated its opinion that bid rigging is nothing more than a form of price fixing and that the critical inquiry concerns the agreement to restrain bidding, not the manner in which the agreement is carried out. *See United States v. Bensinger Co.*, 430 F.2d 584, 589 (8th Cir.1970) (agreement to rig bids "is a price fixing agreement of the simplest kind, and price fixing agreements are per se violations of the Sherman Act.").

Given the court's reading of the cited cases on bid rigging, and given the court's reasoning in its prior ruling on the admissibility of collusion evidence, the court continues to believe that its definition of bid rigging, identical to the ABA's definition, is correct. Under the court's definition of bid rigging, as an agreement to interfere with competition for a transaction conducted by bid, the court finds that there was ample uncontested evidence from which a rational juror could find, beyond a reasonable doubt, that Guthrie entered into such agreements. Accordingly, the court denies Guthrie's motion for acquittal based on the elements of bid rigging.

4. *Motion for Acquittal or for New Trial: Due Process and Application of the Per Se Rule to Bid Rigging*

Guthrie renews his plea for acquittal on due process grounds arguing that the government's application of the per se rule to his activities violates his due process rights. Ct.

Rec. 59 at 8–10. With the exception of the court's trial rulings excluding Guthrie's offers of exculpatory evidence, Guthrie offers no new argument on the due process issue; he merely renews his earlier motion.

The court ruled on Guthrie's due process argument at the pretrial conference and heard further discussion on the issue on the morning of trial. Because neither party provides any new argument or authority on the issue the court denies Guthrie's motion for the reasons expressed in its prior rulings.

In the alternative, Guthrie requests a new trial in which he could present exculpatory evidence. He argues that the Sherman Act does not impose strict liability and that therefore he must be allowed to introduce evidence of his belief that his actions were legal.

The government responds that this court's exclusion of such evidence was clearly in line with the Ninth Circuit's *Alston* decision. *Alston*'s instruction 10, which the circuit specifically approved as a correct statement of the law, clearly stated that, as a matter of law, neither good motives nor a belief that one's activities are legal are available defenses to charges of per se Sherman Act violations. *United States v. Alston*, 974 F.2d 1206, 1210 (9th Cir.1992). Because this court has repeatedly found that *Alston* compels exclusion of Guthrie's exculpatory evidence, it denies his motion for a new trial based on his claimed right to introduce such evidence.

For the reasons discussed above, IT IS HEREBY ORDERED that defendant's motion for judgment of acquittal, or in the alternative for new trial or for arrest of judgment is DENIED.

IT IS SO ORDERED. The Clerk is directed to enter this order and forward copies to counsel.